IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Subscriber information for IP address 166.70.26.57 belonging to XMission | Case No. 2:26mj333 JCB<br><br>AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT<br><br><br>Judge Jared C. Bennett |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, COLLIN SCOTT, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.       I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 2018. I am currently assigned to the Salt Lake City Field Office and the FBI Child Exploitation Task Force. Prior to my employment with the FBI, I obtained a Bachelor's degree in Information Technology, and was employed with a computer software company for five years. As a result of my training and experience, I am familiar with information technology and its use in criminal activities. Since joining the FBI, I have investigated violations of federal law, and am currently investigating federal violations concerning child pornography and the sexual exploitation of children. I have gained experience through training in seminars, classes, and everyday work related to conducting these types of investigations.  I have been involved in numerous investigations involving sex crimes against children, to include leading investigations

related to the sexual exploitation of children over the internet, writing and executing search warrants, conducting undercover operations via the internet, interviewing victims, interviewing suspects and conducting arrests.

2.     As a federal agent, I am authorized to investigate violations of laws of the United States and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3.     The information in this affidavit is based upon my personal observations, my training and experience, and information provided by law enforcement officers assigned to other law enforcement agencies, other special agents and employees of the FBI. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. Thus, I have not included every fact known to me concerning this investigation.

**PURPOSE OF THE AFFIDAVIT**

4.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the property described in Attachment A for the items described in Attachment B.

5.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of the following statutes have been committed: 18 U.S.C. §§ 2251 (Production of Child Pornography), and 18 U.S.C. §§ 2252(a)(1), (2), (4) and §§ 2252A(a)(1), (2), (3), (5) (Possession, Access with Intent to View, Transportation, Receipt, and Distribution of Child Pornography) (the "SUBJECT

2

OFFENSES"). There is also probable cause to search the account described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes, as described in Attachment B.

## JURISDICTION

6.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States … that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Additionally, XMission is located in the District of Utah.

## BRIEF SUMMARY

7.      The FBI and other law enforcement agencies have been investigating individuals involved in the sexual exploitation of children via the Internet. Between March 28, 2026, and April 22, 2026, I downloaded approximately 508 files from device(s) connecting to the internet from the SUBJECT IP ADDRESS (defined below). The files included images and videos of the sexual abuse of children. Further investigation revealed that, between March 28, 2026, and April 22, 2026, the SUBJECT IP ADDRESS distributing the child pornography was assigned to XMission L.C., a Utah based Internet Service Provider. XMission has refused to provide subscriber information related to the SUBJECT IP ADDRESS pursuant to an FBI administrative subpoena, so I am therefore submitting this application for a search warrant for that information (further described in Attachment B.)

3

## DEFINITIONS AND RELEVANT TERMS

8.      Based on my training and experience, I use the following terms to convey the following meanings:

a.      "Child Pornography" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

b.      "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

c.      "IP Address" means Internet Protocol address, which is a unique numeric address used by computers on the Internet.  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.

Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

 d. "Internet" means a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

 e. "Minor" means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

 f. "Mobile application" or "chat application" is a small, specialized program downloaded onto mobile devices, computers and other digital devices that enable users to perform a variety of functions, including engaging in online chat and sending or receiving images and videos.  For example, Facebook has a mobile application and a separate mobile application for Facebook Messenger.

 g. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8)(A), or that have been created, adapted, or modified to appear to depict an identifiable minor, *see* 18 U.S.C. § 2256(8)(C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or

masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2)(A).

h.      "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disk or other electronic means, which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

i.      In this affidavit, the terms "computers" or "digital storage media" or "digital storage devices" may be used interchangeably, and are intended to include any physical object upon which computer data can be recorded as well as all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices capable of performing logical, arithmetic, or storage functions, including desktop and laptop computers, mobile phones, tablets, server computers, game consoles, network hardware, hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical storage media.

## BACKGROUND REGARDING THE INTERNET, COMPUTERS AND CHILD EXPLOITATION

9.      Child pornographers can produce images using a wireless device such as a cell phone. Child pornographers can also produce images using cameras, and those images can then be transferred onto another device either using wire or wireless technology.  Images can also be uploaded to Internet-based storage commonly referred to

as the "cloud." Hard-copy images can also be scanned into a computer. Via the Internet, connection can be made to literally millions of computers around the world.  Child pornography can be transferred quickly and easily via electronic mail or virtually countless other online platforms, communication services, storage services, and applications.

10.    A computer's capability to store images in digital form makes it an ideal repository for child pornography and other files related to the sexual abuse and exploitation of children. The digital-storage capacity in devices and in the "cloud" has grown tremendously within the last several years.  Thumb drives with a capacity of 128 GB are not uncommon. Flash cards with a capacity of 64 gigabytes are not uncommon. Hard drives with the capacity of 500 gigabytes up to 3 terabytes are not uncommon. Phones with over 100 gigabytes in storage are not uncommon. Devices can store thousands of images and videos at very high resolution. These devices are often internet capable and can not only store, but transmit, images via the internet and can use the devices to store images and documents in internet or "cloud" storage spaces. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

11.    With Internet access, a computer user can transport an image file from the Internet or from another user's computer to his own computer, so that the image file is stored in his computer.  The process of transporting an image file to one's own computer

is called "downloading." The user can then display the image file on his computer screen and can choose to "save" the image on his computer and/or print out a hard copy of the image by using a printer device (such as a laser or inkjet printer). Sometimes the only method to recreate the evidence trail of this behavior is with careful laboratory examination of the computer, modem, printer, and other electronic devices.

12.     Many individuals who create and collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. They regularly maintain their collections in the privacy and security of their homes, cars, garages, sheds, or other secure storage location, such as on their person. Others frequently delete their collection of child pornography, as well as wipe their digital devices in an attempt to destroy evidence and evade law enforcement.

13.     I know from training and experience that search warrants of residences involved in computer or digitally related criminal activity usually produce items that tend to establish ownership or use of digital devices and ownership or use of any Internet service accounts accessed to obtain child pornography to include credit card bills, telephone bills, correspondence and other identification documents.

14.     I know from training and experience that search warrants of residences usually reveal items that tend to show dominion and control of the property searched, to include utility bills, telephone bills, correspondence, rental agreements and other identification documents.

15. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

16. Also, again based on my training and experience, wholly apart from user-generated files, computer storage media contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, virtual memory "swap" or paging files, and shadow copies of previous versions of systems or files, or paging files. Computer users typically do not erase or delete this evidence because special software is typically required for that task. However, it is technically possible to delete this information. Data on the storage medium not currently associated with any file can provide evidence of a file that was

once on the storage medium but has since been deleted, edited, moved, or show a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

17.     As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for evidence that establishes how computers were used, why they were used, the purpose of their use, and the purposes to which they were put, who used them, the state of mind of the user(s), and when they were used.

18.     The monitor and printer are also essential to show the nature and quality of the images or files that the system can produce. In addition, the analyst needs all assisting software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instructional manuals or other documentation and security devices. Moreover, searching computerized information for evidence or instrumentalities of crime commonly requires the seizure of the entire computer's input/output periphery devices (including related documentation, passwords

10

and security devices) so that a qualified expert can accurately retrieve the system's data in a controlled environment.

19.    The computer and its storage devices, the mouse, the monitor, keyboard, printer, modem and other system components are also used as instrumentalities of the crime to operate the computer to commit offenses involving the sexual exploitation of minors.  Devices such as modems and routers can contain information about dates, IP addresses, MAC addresses, frequency, and computer(s) used to access the Internet or to otherwise commit the crimes described herein.  The computer equipment may also have fingerprints on them indicating the user of the computer and its components.

20.    Information or files related to the crimes described herein are often obtained from the Internet or the cellular data networks using application software which often leaves files, logs or file remnants which would tend to show the identity of the person engaging in the conduct as well as the method of location or creation of the images, search terms used, exchange, transfer, distribution, possession or origin of the files.  Files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.  Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

21.     "User attribution" evidence can also be found on a computer and is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, videos, and correspondence (and the data associated with the foregoing, such as file creation and last accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time. For example, I know from training and experience that persons trading in, receiving, transporting, distributing or possessing images involving the sexual exploitation of children or those interested in the firsthand sexual exploitation of children often communicate with others through correspondence or other documents which could tend to identify the origin and possessor of the images as well as provide evidence of a person's interest in child pornography or child sexual exploitation.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

22.     I know from training and experience that digital software or hardware exists that allows persons to share digital access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address.  Examination of

these items can reveal information about the authorized or unauthorized use of Internet connection at the residence.

## PROBABLE CAUSE

23.     On March 28, 2026, I was investigating individuals involved in the online sexual exploitation of children via the Bit Torrent Network. I directed my investigative focus to a device at IP address 166.70.26.57 (the "SUSPECT IP ADDRESS"), because it was associated with a torrent of interest to child pornography investigations. Between March 28, 2026, and April 22, 2026, using a computer running investigative BitTorrent software, I directly connected to a device at the SUSPECT IP ADDRESS, and successfully downloaded approximately 508 files.

24.     I reviewed the files, and the contained images and videos depicting the sexual abuse of children, as well as animals. In one image a nude, blonde haired female child is strapped to what appears to be a weight bench on her stomach with a dog standing behind her, the image was titled "9yo Jenny nude tied up waiting for dog to fuck her - underage lolita r@ygold pthc ptsc ddogprn pedo young child sex preteen hussyfan kiddie kiddy porn(1).jpg".

25.     The dates and times during which the device(s) at the SUSPECT IP ADDRESS distributed the files to me include the following (times are in GMT-6):

03/28/2026

03:33 - 05:48

03/29/2026

04:38 – 07:40

04/08/2026

18:58 – 20:22

04/09/2026

08:26 – 09:54

04/09/2026 22:10

To

04/10/2026 03:41

04/10/2026

16:00 – 17:50

04/11/2026

05:54 – 07:22

04/14/2026

11:58 – 23:42

04/17/2026

13:51 – 19:54

04/18/2026

07:54 – 10:59

04/19/2026

17:38 – 21:18

04/20/2026

09:19 – 13:07

04/21/2026

14:35 – 17:41

04/22/2026

05:45 – 08:37

26.    According to the American Registry for Internet Numbers (ARIN), the

SUSPECT IP ADDRESS belonged to XMission, L.C., a Utah based Internet Service

Provider located at 51 East 400 South Suite 000, Salt Lake City, UT 84111.

27.    I sent an administrative subpoena to XMission for subscriber information

related to the SUBJECT IP ADDRESS at the date and times it was used to distribute

child pornography to me, but XMission has refused to comply with this subpoena.

28.    I respectfully submit that there is probable cause to believe that the

subscriber of the SUSPECT IP ADDRESS described in Attachment A, is in violation of

the SUBJECT OFFENSES and records pertaining to the SUSPECT IP ADDRESS are

under the control of XMission.

## SEARCH METHODOLOGY TO BE EMPLOYED

29.    I anticipate executing this warrant under the Electronic Communications

Privacy Act by using the warrant to require XMission to disclose to the government

copies of the records and other information (including the content of communications)

particularly described in Attachment B.

//

## CONCLUSION

30.    For the reasons described above, your affiant respectfully submits that there is probable cause to believe that the identification of those in violation of the SUBJECT OFFENSES will be discovered with the information requested in Attachment A.

31.    I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

*/s/ Collin Scott*
Collin Scott, Special Agent
Federal Bureau of Investigation

Sworn to before me telephonically or by other reliable means pursuant to Fed. R. Crim. P. 4.1 at 4:30 pm on April 22, 2026.

_____
Honorable Jared Bennett
United States Magistrate Judge

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

To the extent that the information described in Attachment A is within the possession, custody, or control of XMission, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to XMission, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), XMission is required to disclose to the government all subscriber information associated with the XMission IP address of 166.70.26.57 during the listed time periods (dates are in MM/DD/YYYY and times are in GMT-6):

03/28/2026
03:33 - 05:48

03/29/2026
04:38 – 07:40

04/08/2026
18:58 – 20:22

04/09/2026
08:26 – 09:54

04/09/2026 22:10
To
04/10/2026 03:41

04/10/2026
16:00 – 17:50

04/11/2026
05:54 – 07:22

04/14/2026
11:58 – 23:42

04/17/2026

13:51 – 19:54

04/18/2026
07:54 – 10:59

04/19/2026
17:38 – 21:18

04/20/2026
09:19 – 13:07

04/21/2026
14:35 – 17:41

04/22/2026
05:45 – 08:37

This subscriber information should include records and information, in any form kept, pertaining to the Account, including:

a.

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

3. Telephone numbers, including SMS recovery and alternate sign-in numbers;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

5. Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

6. Length of service (including start date and creation IP) and types of service utilized;

18

7. Means and source of payment (including any credit card or bank account number); and

8. Change history.

b. All contact and personal identifying information, including [for user IDs: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.]

c. The types of service utilized by the user;

d. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

e. All records pertaining to communications between XMission and any person regarding the subscriber, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I constitutes fruits, instrumentalities and evidence of violations of 18 U.S.C. §§ 2252(a)(1), (2), (4) and §§ 2252A(a)(1), (2), (3), (5) (Possession, Access with Intent to View, Transportation, Receipt, and Distribution of Child Pornography) (the "Subject Offenses") and is the information to be seized by the government.

ATTACHMENT C

Certificate of Authenticity Form

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by of XMission L.C. ("XMission"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of XMission, and they were made by XMission as a regular practice; and

b.    such records were generated by XMission's electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of XMission in a manner to ensure that they are true duplicates of the original records; and

2.    the process or system is regularly verified by XMission, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                     Signature

21